McKinney, J.
delivered the opinion of the court.
This is an action of trespass vi et armis, for the alleged wrongful taking of the slave described in the declaration, brought in the Circuit Court of Shelby county, against the plaintiff in error.
The defendant pleaded first, the general issue, and second, a special plea of justification, in which it is alleged, in substance, that said slave was the property of one Francoise Virginia Bond, a minor, (whose domicil was in the State of Louisiana) and that Virginia Bond, who was the widowed mother and natural guardian and tutrix of said minor, and as such guardian and tutrix was entitled to the possession and control of said slave, and from whose possession said slave had been wrongfully taken, duly authorized, empowered, and requested him to take and restore said slave to the possession of her, the said guardian and tutrix; wherefore by the power, authority, and request aforesaid, he took and carried away said slave, &c., as it was lawful for him to do, &c. The replication to the latter plea traverses specially, that the right of property of the slave was in the said minor; also that the said Virginia Bond was the widowed mother and natural guardian and tutrix of said minor, and likewise the authority and request averred in said plea, and concludes de injuria, &c., and upon this replication, issue was taken by the defendant.
It appears, from the proof, that on the second day of January, 1841, the slave in question, in this case, was sold and conveyed to Francoise Virginia Bond, the legal evidence of which is exhibited in the record. It further appears that, at the date of said conveyance, said Francoise Virginia Bond, was a minor, and that Mrs. Virginia *694 Bond was her mother and surviving parent — the father of said minor, and husband of Mrs. Bond, being dead; and that said slave was delivered into the possession of Mrs. Bond,' as the guardian or tutrix by nature, of said minor, and so remained in her possession and charge until sometime in the latter part of 1844, when she was stolen or enticed away, and conveyed first to Yicksburg in the State of Mississippi, and soon afterwards to Memphis in this State. At the latter place she. was sold at auction, at the instance of a stranger, and under circumstances which excited doubt as to the title, and after some two or •three intermediate sales, was sold to the defendant in error, by a bill of sale, bearing date 6th February, 1845, which is also exhibited.
In the course of a few weeks after the sale to the defendant in error, upon receiving information that said slave was in Memphis, Mrs. Bond, whose residence was in Louis-.-iana, procured the plaintiff in error to proceed to Memphis, with' power and authority to take all such measures ■ as might be necessary to regain the possession of said slave.
A witness on behalf of the defendant proves, that about an hour after the plaintiff in error arrived at Memphis (by steamboat) he was standing on Front Street, opposite the landing; that he saw the slave in question coming towards him on said street alone, and carrying nothing that the witness saw; that the defendant there in the street quietly took possession of said slave, and took her off into the counting room, back of where he was standing, and afterwards conveyed her to Louisiana, and delivered her to Mrs. V. Bond.
Upon the trial of the cause, the circuit judge instructed the jury, “that in trespass for taking a slave under plea and proof of property in a third person, and authority *695 from the owner from whom the slave had been taken, or been stolen away, the defendant may justify the taking, in a quiet and peaceable manner, so that he is not guilty of a breach of the peace, or a trespass upon the person or property of the plaintiff.”
The court further instructed the jury, “ that the defendant must produce the record of Virginia Bond’s oath as tutrix, in order to establish her authority to Collomb, her agent, to reclaim said slave ; and that they could not find that she had that authority without the production of record proof of her said oath.” The jury found a verdict in favor of the plaintiff, and assessed the damages to five hundred and thirteen dollars, and a new trial being refused, the defendant appealed in error to this court.
It is insisted, on behalf of the plaintiff in error, that the latter clause of the foregoing charge is erroneous. It seems that, by the law of Louisiana, tutorship is of four sorts, by nature, by will,? by the effect of the law, and by the appointment of the judge. Civil Code of La., art. 260. After the dissolution of marriage, by the death of either husband or wife, the tutorship of the minor children belongs of right to the surviving mother or father. This is what is called tutorship by nature. Art. 268. The •tutor shall have the care of the person of the minor, and shall represent him in all civil cases. He shall administer' his estate as a prudent administrator would do, and shall be responsible for all damages from a bad administration. Art. 268.
Tutorship by nature takes place of right; every other kind of tutorship must either be confirmed or given by the judge. Art. 265. It is required by art. 328, in general terms that, prior to entering upon the’ exercise of their *696 duties, tutors shall take an oath before the judge that they will well and faithfully fulfil their trust.
But it is said by the counsel for the plaintiff in error, that this, and other requisitions of the law, do not apply to tutors by nature; because this sort of tutorship takes place of right, and results from the parental relation; and for this are cited 6 La. Rep., 354, 355-7; Mart. Rep., 363. In the former cases it is said, “ Tutors are bound by law to obtain the confirmation of their appointment from the judges of probates, to take an oath faithfully to discharge the duties, and give security. The only exception, with regard to any of these requisitions, has relation to tutors by nature, and no others.” And in the latter case the court says; “ A father being natural tutor, has no need of the interference of courts of justice to assume the rights and privileges which belong to the office.” These authorities are not very satisfactory, and though they give plausibility to the argument, they do not enable us to pronounce with certainty what is the course of adjudication in the courts of Louisiana upon this question; nor is it necessary in the determination of this case, that we should do so, as a part of the charge now under consideration is clearly erroneous upon another and different, ground.
Conceding for the present, that Mrs. Bond had failed to consummate her right as tutrix by nature to her infant child, and that no such relation existed between them; still the proof establishes the fact, that the slave was wrongfully taken from her actual possession, and that such possession had been held by her, for the benefit of the minor child, for a period of nearly four years preceding. And upon the mere fact of such actual and exclusive possession, it is clear, that a wrong-doer, having neither *697 title nor right to possession, she could have maintained an action of trespass, trover, or detinue for the recovery of the slave or the value in damages. This being established, it requires neither argument nor authority to show that she might empower another, in her behalf, to institute suit, or to reclaim possession of the slave, in any mode permitted by law, and such authority by parol would be sufficient. It follows, therefore, that upon this point his Honor, the Circuit Judge, erred in his instructions to the jury-
And here perhaps we might dismiss the case, without deciding upon other questions discussed in the argument of the cause, as no other error has been assigned in behalf of the plaintiff here. But it has been earnestly insisted upon by the counsel for the defendant in error, that the proposition asserted by the court, in the first paragraph of the charge to the jury, is altogether erroneous; and not only so, but in opposition to former adjudications of this court; and that upon the law, as laid ■down in the cases referred to, the matter of justification relied upon in bar of this action, admitting it to be true, constitutes no defence to the recovery sought, and, therefore, it is argued that the judgment should not be reversed upon the former ground, as a new trial can be of no avail to the plaintiff in error.
In this view we have deemed it proper to examine the question involved in the first clause of the charge; and the result is a thorough conviction in our minds that the principle announced is strictly correct, in reference to the facts of this case; nor do we understand that this principle Is contravened by any decision of this court, directly upon the question; although in some of the adjudications of ©ur predecessors there may be found general expressions *698 which, apparently, support the argument of the counsel for the defendant in error; but they were not called for by the facts, as in none of the cases was the question as now presented, involved.
The argument assumes, that in this State, the common law, doctrine of recaption does not apply to slave property; and that the rightful owner, who has been tortiously deprived of the possession of his slave, and whose right of property remains unimpaired by operation of the statute of limitations or otherwise, is not permitted to retake him, if in the actual or supposed constructive possession of the wrong-doer, although in the act of retaking, he commit, no actual trespass either upon the person or property of the wrongful possessor; and that upon a retaking in the given case, the owner is liable at the suit of such wrongful possessor, to a recovery in damages, in an action of trespass, not merely for the supposed trespass in taking, but also for the value of the slave. From all t.bis we wholly dissent; and hold .the law to be just the reverse.
The doctrine contended for, is alike contrary to reason and the plainest principles of justice, and the uniform current of authority.
It may be observed here that,' although in some cases, civil as well as criminal, general principles, applicable to other kinds of personal property, may demand some modification in their adaptation to beings, regarded as the subject of property, endowed with volition and reason, and the power of locomotion; yet upon the facts of the case under consideration, we are not aware’of any ground of distinction arising out of the nature of the property in controversy.
*699 We hold the law to be then, that the owner of a slave from whose possession the same has been wrongfully-taken, has the right so long as his legal title subsists, not' barred by operation of the statute of limitations, or otherwise, to retake such slave wherever he may be found, if this may be done without breach of the peace, and without trespass upon the person or premises of the wrongful possessor. The common law, indeed, carries the doctrine farther and justifies an entry into the house' or upon the premises and a retaking from the actual possession of the wrong-doer; such entry is not regarded as a trespass, but on the contrary as compatible with the rights of the general owner of the property. 3 Black. Com., 4. But we think the safer rule, in reference to this peculiar kind of property, is, to deny the right of entry in such cases as it would necessarily tend to a violation of the public peace. There are other limitations and restrictions of this right founded in wise policy. It cannot be exercised at the hazard of the peace and good order of society, to which the private rights and interests of individuals must always be held subordinate. Hence if a breach of the peace ensue, the owner of the slave is indictable. Nor can this right be exercised where the title-of the former owner is barred by the statute of limitations or otherwise extinguished. The right results from, and is wholly dependant upon the fact of ownership; to hold, therefore, that the right to regain the possession, in any mode, existed after the title and right of possession has ceased to exist, would be most absurd, Neither can the owner, in the exercise of this right, justify an injury to the person, or an entry within the close of the person in possession of the slave. In such case, the owner must seek his remedy by action.
*700 But if the slave be found off the premises of the person having had possession, the owner may lawfully recapture him, provided he do so without force or breach of the peace. And in such case neither an action of trespass nor other form of action can be maintained against the owner or one acting under his authority, either by the wrong-doer, or any one claiming to hold from under him. In such case, there is no injury, either to the right or rights of possession of the wrong-doer; for as against the .proper owner, he has neither the one nor the other. He can hav,e no constructive possession of the property tor-tiously taken or held by him. Such an idea is an absurdity, and is without authority to countenance it. Constructive possession results from title alone, and can exist only in favor of the rightful owner, and in general it does exist in his favor until put an end to by actual adverse possession in another. But as respects a wrong-doer, the law is otherwise. His right, if it may be so called, depends solely upon the fact of actual possession; in other words, his actual possession is all that the law recognizes or protects; and that merely upon a principle of public policy for the preservation of the peace and repose of society. And all that he can be heard to complain of is, an injury to his actual possession, at least as against the owner. But the term, actual possession, in reference to a wrong-doer, must be understood in a limited sense, and as not existing, so as to entitle him to maintain trespass against the owner, where the slave, though in his service, or on his errand, is not within his close in fact or in law, as was the fact in the case under consideration. These principles, we think, are fully sustained by reason and .authority, and are essential to the protection and security *701 of tbe rights of the owner of slave property, All the authorities concur, that in trespass the gist of the action is a forcible injury to property in the possession of the plaintiff, and upon the general issue, the plaintiff must prove that the property was in his possession at the time of the injury, and this rightfully, as against the defendant. 2 Greenl. Ev., sec. 613. This possession as to the general owner is either actual, or- it may be constructive, upon the principle, that the right of property draws to it the possession, where there is no intervening adverse possession. The authority above lays it down, that possession is constructive when the property rightfully belongs to the plaintiff, but is in the actual custody and possession of no one; or when it is in the care and custody of a servant, agent, overseer, or borrower, a bailee for carriage or other service, or the like; where the actual possessor has no vested interest or title to the beneficial use or enjoyment.of the property; but on the contrary the owner may resume the possession at pleasure. Ib. sec. 614. The same author lays down the principle, to be found, indeed, in all the books, “that proof of an actual and exclusive possession by the plaintiff, even though it be by wrong, is sufficient to support this action (trespass) against a mere stranger or -wrong-doer, who has neither title to possession in himself, nor authority from the legal owner. The wrongful possessor, though tenant by sufferance has no such remedy against the rightful owner, who resumes the possession. Ib., sec. 618 and the authorities cited. From these principles, which are certainly correct, it. clearly follows, that in the case under consideration, there having been no actual trespass, either to the person or property of the defendant in error in the recaption of the slave in question, this action cannot be *702 maintained for any purpose. And even bad there been a trespass to the actual possession, the extent of the right of recovery, would have been for $uch trespass merely, not for the value of the slave. We scarcely deem it necessary to review the cases referred to in our own reports, as they do not, in our judgment, conflict with the opinion here expressed, and were if otherwise, we would feel constrained to dissent from their authority. In the case of Kegler vs. Miles, (Mar. and Yer. Rep., 426,) the only point raised by the facts was, whether the adverse possession of a slave for more than three years, would vest a right of property in the possessor, under the statute of limitations, and it was properly held that it would; and that in such case there existed no right of recaption.
This is all that can be regarded as decided in tfee-ease, and we fully assent thus far to the correctness of the decision. The case of Partee vs. Badget and others, (4 Yer.. 174) presents the same identical question, made in case of Kegler vs. Miles; and simply re-afflrms the principle decided in that case. The case of Marshall vs. Penington (8 Yer. Rep., 424) was a penal action upon the act of 1799, chap. 28, sec. 2, for enticing away and harboring a slave, and we think is no authority in the present case, and need not, therefore, be further noticed.
Let the judgment be reversed and the case be remanded for another trial.